Neil F. **SANDLER**, Appellant–Defendant,

v.

Paul D. **GILLILAND**, Appellee–Defendant,

and

Anthony Wayne Bank, successor in interest by merger with Summit Bank, Appellee–Plaintiff.

No. 02A05–9206–CV–208.

Court of Appeals of Indiana, Fifth District.

Jan. 11, 1993.

Transfer Decided March 24, 1993.

---

Thomas J. Galanis, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellant-defendant.

A. Dale Bloom, Suzan L. Rutz, Bloom, Bloom, More and Miller, Fort Wayne, for appellee.

BARTEAU, Judge.

Neil Sandler appeals the trial court's garnishment order in favor of Anthony Wayne Bank (the "Bank"). Sandler raises two issues which we consolidate and restate as whether a judgment creditor of one spouse can attach and garnish marital assets held in an escrow account established by a trial court pending an order of property division in a marital dissolution action.

We affirm in part, reverse in part, and remand with instructions.[1]

### FACTS

The Bank obtained a judgment in the Allen Superior Court against Paul Gilliland for payment of a note executed by him. On December 27, 1991, the Bank filed a petition for garnishment order naming Sandler as a garnishee defendant. Sandler is the trustee of an escrow account established by order of the Allen Superior Court, Family Relations Division ("Family Court"), pursuant to Gilliland's divorce proceedings in the Family Court. The escrow account was established to receive the proceeds from the sale of Gilliland's interest in FAB–Weld, Inc. Sandler was named as trustee of the escrow account and ordered to disburse funds from the account to Gilliland's wife as maintenance until final disposition of the marital assets. Sandler was

---

1. The Bank's motion to strike a portion of Sandler's reply brief that raises a new theory on appeal is denied.

also ordered to pay wife's attorney fees from the escrow account. It is undisputed that Gilliland's interest in FAB–Weld is a marital asset and that the judgment in favor of Bank was against Gilliland individually. The Family Court has not yet entered an order disposing of the marital property and while it is not clear from the record how much FAB–Weld still owes Gilliland, it is apparent that future payments are still to be made. At the time of these proceedings, the escrow account held about $30,000.00. On May 18, 1992, the Allen Superior Court granted Bank's order for garnishment against Sandler in the amount of $29,942.42.

### DISCUSSION

▮ Sandler first contends that the Allen Superior Court did not have jurisdiction over the escrow account because it is a marital asset under the exclusive jurisdiction of the Family Court. We agree that the Family Court is given exclusive jurisdiction over the rights in the marital assets of the parties to the dissolution proceeding. *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391. However, the case before us does not raise this concern because the Allen Superior Court did not attempt to invade the Family Court's jurisdiction over the division of marital assets between the Gillilands.

▮ What is brought into question is whether the Allen Superior Court can interfere with the escrow account established by and in the custody of the Family Court. This is a situation similar to the conflict in jurisdiction between a federal and state court where one court has taken constructive possession of the *res* of a lawsuit. As between state and federal courts the court whose jurisdiction is first invoked by the filing of a suit is treated as having constructive jurisdiction of the *res* to the exclusion of other courts. *Barrett v. International Underwriters, Inc.* (7th Cir.1965), 346 F.2d 345. This does not mean, however, that all other courts are precluded from deciding every question which might concern the property involved. *Id.* Other courts are merely unable to render a judgment or decree which will interfere with the constructive possession of the court which first took jurisdiction. *Id.*

Thus, in *Barrett* the Seventh Circuit held that the federal district court properly declared that the judgment creditor's levy of execution created a lien on the funds owned by the judgment debtor and held by the garnishee defendant bank even though the judgment debtor was in liquidation proceedings in state court and the state court had ordered the Department of Insurance to take possession of the judgment debtor's assets. The creation of the lien did not interfere with the state court's jurisdiction over the assets because the federal court specifically recognized that the assets were subject to state court supervision and refused to grant relief to the judgment creditor beyond declaring the validity and time of attaching of the execution liens. *Id.*

Here, the Allen Superior Court went too far. As in *Barrett* the Allen Superior Court did not interfere with the Family Court's jurisdiction over the escrow account to the extent that the Superior Court declared a valid lien had attached to Gilliland's interest in the account. However, by ordering garnishment of the funds, the Allen Superior Court interfered with the Family Court's possession of the escrow account. The Family Court undoubtedly established the escrow account to ensure that the proceeds from FAB–Weld would be preserved as marital assets to be divided between the parties. Allowing another court to distribute funds from that escrow account would thwart the Family Court's purpose in establishing the account and would clearly impede the Family Court's jurisdiction. The Allen Superior Court therefore erred by ordering immediate garnishment of the funds held in the escrow account.

▮ Sandler also argues that he was not subject to garnishment as trustee of the escrow account because he did not possess or have under his control any property of Gilliland's. Our research did not reveal any case, in Indiana or otherwise, addressing the precise issue whether a judgment creditor of one spouse could attach or garnish marital assets in an escrow account established by the court pending a marriage dissolution proceeding. Several

courts have addressed the general issue whether an escrow account is subject to attachment or garnishment. Clearly, if the escrow account holds an interest belonging to the judgment debtor at the time the trustee or escrow agent is served notice, the escrow account is subject to attachment. *See e.g., Malbin & Bullock, Inc. v. Hilton* (1980), Ind.App., 401 N.E.2d 719; *Clay v. Hamilton* (1945), 116 Ind.App. 214, 63 N.E.2d 207. However, if the escrow account does not hold an interest belonging to the judgment debtor when notice is served, the account is not subject to attachment. *See e.g., Terry v. Deitz* (1874), 49 Ind. 293; *First Central Coast Bank v. Cuesta Title Guarantee Co.* (1983), 143 Cal.App.3d 12, 191 Cal.Rptr. 433.

■ At issue here is whether Sandler, as trustee of the escrow account, held an interest belonging to Gilliland, the judgment debtor. It has been said that a contingent or uncertain interest, where it is not clear that a debt is owing to the judgment debtor by the garnishee, is not subject to garnishment. *See e.g., First Central*, 191 Cal. Rptr. 433; *Fico, Inc. v. Ghingher* (1980), 287 Md. 150, 411 A.2d 430, 18 ALR4th 1077. On the other hand, an unmatured interest, where the uncertainty involves only the amount of the debt and not the liability itself, is subject to garnishment. *First Central*, 191 Cal.Rptr. 433; *Fico*, 411 A.2d 430.

In *Fico*, a judgment creditor attempted to attach an escrow account that had been established when the judgment debtor sold its business pursuant to the Uniform Bulk Transfers Act. Proceeds from the sale were paid to those creditors of the seller that the seller had made known to the buyer. The escrow account was established to hold sufficient funds to pay the creditors whose claims were disputed. The judgment creditor in this action had not been revealed to the buyer and the escrow account did not contain funds to pay the judgment creditor. However, there was no question that any surplus in the escrow account after the disputed claims were settled would belong to the seller/judgment debtor. Thus, the court held that the judgment debtor's interest in the escrow ac-

count was merely unmatured and not contingent. *Id.* The judgment creditor was entitled to attach the account to the extent any surplus remained after the other creditors were paid. The attachment created a lien against the account until such time as the other creditors had been paid and it could be determined whether there was a surplus that could be paid to the judgment creditor. *Id.*

In *First Central*, the judgment creditor of a real estate broker attempted to attach an escrow account established in connection with a transaction involving a sale of real estate. The escrow instructions provided that the judgment debtor was to receive a commission at the close of the escrow from funds deposited in the escrow account on behalf of one of the parties to the sale. The judgment creditor levied on the account on July 7; the escrow did not close until July 8 when all of the conditions of escrow had been satisfied. The court held that the judgment debtor's interest in the escrow was merely contingent until all conditions of escrow had been satisfied. *Id.* This was so because the judgment debtor did not have a right to the commission until all the conditions of escrow were satisfied. If for any reason escrow did not close, the escrow agent would not be liable to the judgment debtor for the commission to be paid out of the escrow funds. Thus, at the time the escrow agent was served notice of the attachment on July 7, the agent was not liable to the judgment debtor and there was nothing for the judgment creditor to attach. *Id.*

■ We are confronted here with a situation more like that found in *First Central* than in *Fico*. Gilliland does not have an interest in the funds held in escrow unless and until the Family Court makes a disposition of marital property giving Gilliland an interest in those funds. Thus, Sandler's liability as escrow agent to Gilliland is contingent upon the trial court's action. However, we do not agree with the California court in *First Central* that a contingent interest is not subject to attachment. We believe the better approach is that illustrated in *In re Great Lakes Steel & Fabricating Industries, Inc.* (Bkrtcy.N.D.Ind.1988),

83 B.R. 1015. In *Great Lakes* the judgment creditor obtained in the Porter County Superior Court an attachment order on the judgment debtor's interest in a counterclaim against the judgment garnishee. At the time, the judgment debtor's counterclaim was disputed, contingent and unliquidated. In its bankruptcy proceeding, the judgment debtor claimed that the judgment creditor did not have a priority to funds owed the judgment debtor by the garnishee defendant because the order of attachment was not valid. The bankruptcy court ruled that the order of attachment was valid even though the judgment debtor's interest in the counterclaim was contingent.

 In doing so, the court recognized that Indiana has long held that choses in action (a right to recover a personal chattel or a sum of money) are subject to proceedings supplemental. *Id.* (citing *Butler v. Jaffray* (1859), 12 Ind. 504); *accord* Ind. Code 34-1-44-7 (authorizing court in proceedings supplemental to forbid transfers of choses in action). The *Great Lakes* court also distinguished pre-judgment attachment cases where future interests incapable of reasonable evaluation have not been allowed to be attached. The greater protection provided the defendant in pre-judgment proceedings is not necessary in proceedings supplemental because the claim has been determined to be a justly owed debt and reduced to a judgment. *Great Lakes*, 83 B.R. at 1022. Further, to hold that the judgment debtor's contingent interest in a counterclaim is not attachable "would permit a judgment debtor to keep its choses in action judgment-proof until such time as a settlement or judgment is entered. Moreover, it would render nugatory the continuing jurisdictional control endowed upon Indiana Courts by [I.C. 34-1-44-7] over a judgment debtor's future income, profits, and assets." *Id.*

The same rationale is equally applicable here. Clearly, Gilliland's interest in the funds in the escrow account is contingent upon the Family Court's division of marital assets. Gilliland may be awarded all, some, or none of the funds in the account. However, the contingency of his interest should not preclude the Bank from attaching a lien on the account to protect its interests in the event the Family Court awards all or a part of the funds to Gilliland. To hold otherwise would impose an unjustifiable burden on the Bank to daily investigate whether the Family Court has entered a final order dividing the marital assets.

As we stated above, however, the Allen Superior Court improperly ordered immediate garnishment of the funds. Until the Family Court disposes of the escrow account and awards funds from that account to Gilliland, the Bank is entitled only to a lien on the account. Thus, we reverse the garnishment order and remand this case to the trial court with instructions to modify its judgment to reflect that the Bank has a valid lien on the escrow account to the extent that any portion of the account may be awarded to Gilliland by the Family Court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

SHARPNACK, C.J., and SULLIVAN, J., concur.