Filed 3/17/26  Bagby v. Davis CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| DOUGLAS A. BAGBY, | B338600 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC663174) |
| v. | |
| JOSEPH DANIEL DAVIS, | |
| Defendant and Appellant. | |

APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge.  Affirmed.

Nemecek & Cole, Frank Wynn Nemecek and Mark Schaeffer for Defendant and Appellant.

Douglas A. Bagby, pro. per.; Stiller Law Firm and Ari J. Stiller for Plaintiff and Respondent.

## INTRODUCTION

More than five years ago, respondent Douglas A. Bagby obtained a $5 million default judgment against appellant Joseph D. Davis.[1]  Shortly after entry of judgment, Bagby unsuccessfully sought to levy on an annuity of which Davis is the beneficiary.  Almost three years later, Bagby again sought to levy on that annuity.

Davis argued collateral estoppel should bar this latter attempt to levy on the annuity.  The trial court disagreed, finding changed circumstances obviated the application of collateral estoppel and Davis had failed to prove an exemption under applicable law.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Davis received an annuity as part of a settlement of a personal injury case.  While Davis is the annuitant, an entity identified as "SABSCO" is the annuity's owner; Symetra Life Insurance Company (Symetra Life) is the issuer, and the payments come through JPMorgan Chase.

Bagby obtained judgment against Davis in July 2020, obtained a writ of execution, and sought to levy on Davis's monthly annuity payments.  In response, Davis claimed the annuity was exempt from collection because he was a resident of Florida and a Florida statute prohibits enforcing judgments against annuities.  Bagby opposed the claim, arguing Davis was a resident of California.

---

[1]     This is the fifth appeal this division has received in an ongoing dispute between these parties.  There is at least one additional appeal, involving a house in Idaho, which the Idaho Supreme Court resolved in 2023.  (*Bagby v. Davis* (2023) 173 Idaho 903.)  The history of the proceedings is more fully summarized in *Bagby v. Davis* (Feb. 17, 2026, B333649) ___ Cal.App.5th ___ [2026 WL 444616] (*Bagby IV*).

On October 15, 2020, the trial court granted the claim of exemption.[2] The court found Davis resided in Florida, and on that basis applied the Florida statute barring creditors from collecting on annuities. No appeal was taken from this ruling.

Two and a half years later, in June 2023, the trial court ruled Davis was then living in California for purposes of subpoena service. (*Bagby IV, supra,* ___Cal.App.5th___ [2026 WL 444616 at p. *2, fn. 3].) Thereafter, Bagby again attempted to levy on the Symetra annuity. Davis again claimed exemption on the grounds that he lived in Florida.

After the second levy, on a separate motion to determine an exemption claimed by Davis with respect to different property, the trial court ruled California exemption law applies in this case regardless of where Davis lives at any given time. Bagby adopted that position in his opposition to the exemption claim here.

Davis maintained his position that Florida law should apply. He also argued collateral estoppel should prevent relitigation of the exemption and the trial court lacked jurisdiction over the annuity because it was located outside of California.

The trial court heard the claim of exemption on January 16, 2024. After argument, the court requested supplemental briefing on the issue of whether it had authority over the annuity.

In his supplemental briefing, Davis argued again that the annuity is located outside of California, but also argued that the annuity is exempt even under California law.

---

[2] The ruling was made by Judge John P. Doyle, the bench officer assigned to the case. Judge Doyle subsequently retired; all future decisions mentioned here were made by Judge Bruce G. Iwasaki.

3

On April 8, 2024, the trial court denied the claim of exemption. The court ruled it had jurisdiction over Symetra Life because the annuity contract was issued to Davis while he lived in California. The court applied California law rather than Florida law, and found Davis failed to meet his burden to establish an exemption.

Davis timely appealed.[3]

## DISCUSSION

On appeal, Davis again argues the doctrine of collateral estoppel should have barred Bagby's second attempt to collect on the annuity. He also argues the annuity is not subject to the jurisdiction of California courts, Florida law should apply, and the annuity is exempt from collection even under California law. For the reasons given below, we do not find these arguments compelling.

I.     *Standard of Review*

The trial court's decision resolved questions of both law and fact. We review questions of law de novo. (See *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183.) We review factual findings for substantial evidence. (*Ridec, LLC v. Hinkle* (2023) 92 Cal.App.5th 1182, 1197 (*Ridec*).)

As the exemption claimant, Davis has the burden of proving the exemption applies. (Code Civ. Proc., § 703.580, subd. (b).)[4] Where the trial

---

[3]     Bagby's motion to dismiss based on disentitlement, filed September 5, 2025, is denied.

[4]     All future statutory references are to the Code of Civil Procedure, unless otherwise stated.

court found Davis failed to carry that burden, Davis's burden on appeal is to show that the evidence compels a finding in his favor as a matter of law. (See *Ridec, supra*, 92 Cal.App.5th at pp. 1197–1198.)

## II.     *Collateral Estoppel*

Collateral estoppel applies where an issue was actually litigated and necessarily decided in a final adjudication on the merits of a prior proceeding. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943–944 (*Pacific Lumber*).) Collateral estoppel may be applied directly, against a party to the prior proceeding, or indirectly, against a party in privity with a party to the prior proceeding. (*Ibid.*) Davis does not argue any of these requirements were met here. Instead, he contends collateral estoppel must always apply where an appealable order is not appealed.

It is true that the trial court has no jurisdiction to amend a judgment after it becomes final. (*Estate of Keet* (1940) 15 Cal.2d 328, 333; *Raisin Investment Co. v. Magginetti* (1952) 109 Cal.App.2d 163, 164.) The same rule also prevents a trial court from altering its own order granting relief from a default judgment. (*City of San Diego v. Superior Court* (1950) 36 Cal.2d 483.) But Davis cites no authority which applies this rule to judgment enforcement proceedings, and the rule itself is not an application of collateral estoppel.

Further, case law describes the elements of collateral estoppel, set forth above, as "threshold requirements." (*Pacific Lumber, supra,* 37 Cal.4th at p. 943.) Collateral estoppel is an equitable doctrine governed by fundamental principles of fairness; it is not mechanically applied in every case where those threshold requirements are met. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 835; *White Motor Corp. v. Teresinski* (1989) 214 Cal.App.3d 754, 763.) To determine whether collateral estoppel should apply, courts look to

5

the public policies underlying the doctrine. (*Pacific Lumber, supra,* 37 Cal.4th at pp. 943–944.) Those policies include the integrity of the judicial system, judicial economy, and the prevention of vexatious litigation. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 343.)

Here, those policies weigh against applying collateral estoppel. Judge Iwasaki correctly determined that California law governs, rather than the Florida law originally applied by the parties and the court. (*Bagby IV, supra,* ___Cal.App.5th___ [2026 WL 444616 at p. *4].) It would not promote the integrity of the judicial system to prevent the court from applying the law that governs the case. Nor is there harm to judicial economy. Claims of exemption are much like ordinary motions; the paperwork filed is not massive and only a single hearing is required. Finally, there is no prospect of vexatious litigation here; the two levies occurred years apart, and there was a change of circumstances in the interval that gave Bagby reasonable justification for making a second attempt.

Davis relies on a series of cases discussing appealability.[5] But Bagby's second attempt to levy on the Symetra annuity was neither an appeal from nor a collateral attack on Judge Doyle's 2020 ruling. Judge Iwasaki found

---

[5] *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1146–1148 discussed whether a motion to vacate a criminal judgment had met the requirements of a writ of coram nobis. *In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1833 explained that an appeal from an order terminating parental rights under Welfare and Institutions Code section 366.26 does not permit review of all earlier juvenile court decisions. *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 states the general rule that an appellate court may not review an order that was not appealed. *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 303 & fn. 7 and *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1726 discuss when a judgment becomes final.

that Davis was living in California in 2023, *after* Judge Doyle's ruling. (*Bagby IV, supra,* ___Cal.App.5th___ [2026 WL 444616 at p. *2, fn. 3].) Bagby attempted a second levy on the theory that new facts applied: Davis now lived in California. While these alleged new facts ultimately proved irrelevant to Judge Iwasaki's legal conclusions, Bagby was not simply relitigating the same facts presented to Judge Doyle.

Collateral estoppel does not apply here.

### III.  *Jurisdiction*

Davis argues the trial court lacked jurisdiction over the annuity because the annuity contract is held by Symetra Life, which is an Iowa corporation headquartered in the state of Washington.[6] The nature of an annuity renders this argument unpersuasive. An annuity is the contract right to receive payments at fixed intervals for a given term. (*In re Marriage of Ziegler* (1989) 207 Cal.App.3d 788, 791, fn. 2.) Davis concedes that a contractual right to receive payment is not a tangible asset. (See *321 Henderson Receivables Origination LLC v. Sioteco* (2009) 173 Cal.App.4th 1059, 1073–1074.)

Intangible assets have no physical characteristics, and therefore no particular location. (*Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100, 1108 (*Pacific Decision*).) Thus, when the issue is a request that funds be paid to one claimant over another, the funds are deemed to be located wherever there is personal jurisdiction over the

---

[6]  Alternatively, Davis argues the trial court lacked power to rule on the exemption because the writ of execution "expired." Davis is incorrect (see *Bagby IV, supra,* ___Cal.App.5th___ [2026 WL 444616 at p. *3]), and in any event has forfeited that argument by failing to raise it below. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074.)

7

custodian. (*Ibid.*) In *Pacific Decision*, the custodians were located solely in New Jersey and Florida, and the trial court made orders expressly to be performed out-of-state. (*Id.* at pp. 1104, 1108.) Here, however, Symetra has an agent in California, and there is no indication the Los Angeles Sheriff's Department has served anyone outside their jurisdiction.

Davis relies on *De La Montanya v. De La Montanya* (1896) 112 Cal. 101. For the reasons given in *Bagby IV, supra,* ___ Cal.App.5th___ [2026 WL 444616 at p. *3] that case is not on point. Likewise, *State v. Western Union Financial Services, Inc.* (2009) 220 Ariz. 567 is not persuasive. There, the Arizona attorney general attempted to intercept international wire transfers directed to other states, between persons over whom Arizona had no jurisdiction. (*Id.* at pp. 568–569.) This is not a criminal asset seizure, and the court clearly has jurisdiction over Davis, the person receiving the payments.

Finally, Davis argues the annuity issuer (Symetra Life) and owner (SABSCO) are indispensable parties to the exemption proceeding and due process requires that they receive notice of the hearing on the claim of exemption. However, Davis cites no California authority in support of such a requirement.[7] He relies on Insurance Code section 10134, subdivision (g), which defines the term "interested parties" for the purposes of a sale of structured settlement payment rights. That is far from a guarantee of notice and a right to appear at a hearing on the enforcement of a judgment against a third party. Further, that article of the Insurance Code only applies if the payee, settlement obligor, or annuity issuer is domiciled in California. (Ins.

---

[7]     Davis cites a Florida case in which the annuity issuer was served with a "writ of garnishment" and successfully moved to quash the writ. (*Windsor-Thomas Group, Inc. v. Parker* (2001) 782 So.2d 478. That case turned on the interpretation of Florida law, not due process. (*Id.* at p. 484.)

8

Code, § 10135, subd. (c).)  As Davis insists, neither he (the payee), SABSCO (the obligor), nor Symetra Life (the issuer) is domiciled in California. Therefore, Insurance Code section 10134 does not apply.

The record makes clear that Symetra Life has been aware of the proceedings and did not intend to contest jurisdiction or otherwise participate in the dispute: its counsel sent Bagby a letter offering to hold the annuity payments in escrow pending the outcome of the hearing.  Davis does not explain why SABSCO would take a different position, or why SABSCO's position would matter.  As Bagby points out, California law does not permit corporations to assert exemptions from the enforcement of judgments.  (Code Civ. Proc., § 703.020, subd. (a); *California Coastal Com. v. Allen* (2008) 167 Cal.App.4th 322, 329.)

The annuity is within the jurisdiction of the California courts.

IV.     *Choice of Law*

Davis argues that because he lives in Florida, the trial court should have applied Florida law.  As we explained in *Bagby IV, supra,* ___Cal.App.5th___ [2026 WL 444616 at p. *4], the courts of each state follow their own exemption laws, not those of other states.  (See also *In re Marriage of DeLotel* (1977) 73 Cal.App.3d 21, 24.)  Davis's place of residence or domicile is therefore irrelevant.  The trial court properly applied California law.[8]

---

[8]     Having reached this conclusion, we need not discuss Davis's arguments regarding his domicile or residency, including his claims of judicial estoppel on those subjects.  Nor need we discuss Florida law.

9

V. *California Law*

Davis argues annuities are not subject to writs of execution, the collection method employed by Bagby here. This argument rests on a deceptive omission. Davis relies on section 699.720, subdivision (a)(6), which he quotes as providing that "[t]he following types of property are not subject to execution: . . . annuity policy." But the ellipsis conceals a crucial phrase. The statute actually provides that "[t]he following types of property are not subject to execution: [¶] . . . [¶] (6) The *loan value* of an *unmatured* life insurance, endowment, or annuity policy." (Italics added.) It is clear from this language that annuities are not necessarily exempted by section 699.720, subdivision (a)(6). Bagby points out the error in his respondent's brief, and Davis nevertheless repeats it in his reply. Whether this glaring, repeated omission was intentional or merely careless, we warn counsel that misquoting a statute twice in briefing is not acceptable practice. Intentional deception in briefing is sanctionable; even unintentional deception may be sanctionable if errors are repeated. (See *DeRose v. Heurlin* (2002) 100 Cal.App.4th 158, 160; *Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 442–443.)

Next, Davis cites section 695.030, subdivision (a), which prevents collection of any property "that is not assignable or transferable." Davis claims his annuity contract contains a provision barring assignment or transfer of the annuity, as a means of securing certain tax benefits. Yet the contract is not part of the record on appeal, and there is no indication it was presented to the trial court. Davis supplied only a copy of the face page, bearing what appears to be a warning sticker that says, "[t]he right to receive benefits may not be sold to anyone else or used as collateral for a loan." He also submitted a declaration to the trial court, asserting that the annuity

10

contract contains the following sentence: "No payment under this annuity contract may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment." The record contains no other evidence of the contents of the annuity contract.

Even assuming the warning sticker on the annuity's face page can be considered part of the contract, and accepting Davis's one-sentence quotation, Davis's evidence is insufficient to support his point. First, these provisions only purport to bar the beneficiary from transferring or assigning payments; they do not prevent the transfer or assignment of the annuity itself. Second, and more fundamentally, we do not interpret contractual provisions in isolation. (*Evleshin v. Meyer* (2025) 115 Cal.App.5th 1021, 1035.) Although a single contractual provision can appear clear and explicit, other provisions may alter it or create exceptions. (*Ibid.*) Providing the annuity's face page and quoting a single sentence from the contract is insufficient to prove the annuity was not assignable or transferable within the meaning of section 695.030, subdivision (a). Davis has failed to meet his burden on this exemption. (See *Ridec, supra,* 92 Cal.App.5th at pp. 1197–1198.)

Finally, Davis relies on section 699.720, subdivision (a)(9), which provides that "[a] contingent remainder, executory interest, or other interest in property that is not vested" is not subject to a writ of execution.[9] This section codifies the principle that a judgment creditor has the same entitlement to payment the judgment debtor has, and no more. (*First Central Coast Bank v. Cuesta Tit. Guarantee Co.* (1983) 143 Cal.App.3d 12, 16.)

---

[9] Such property remains subject to collection by other means. (§ 709.020.)

Under the authorities cited by Davis, a writ of execution may be used to collect any periodic payments that have come due and have yet to be paid. (*In re Marriage of Williams* (1985) 163 Cal.App.3d 753, 768.)  Therefore, to apply this exemption, Davis had the burden of establishing the relevant timeline: when payments became due, when they were paid, and whether the writ of execution was served in between those times.  (§ 703.580, subd. (b).)  Davis does not discuss these points in his briefing, and we have found nothing in the record to supply the required information.  Therefore, Davis has failed to meet his burden.  (See *Ridec, supra,* 92 Cal.App.5th at pp. 1197–1198.)

## DISPOSITION

The order of the trial court is affirmed.  Bagby shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


COLLINS, J.


TAMZARIAN, J.


12